UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KRYSTAL LASHONDA
BREJTFUS,

     Plaintiff,

v.                                          Case No.:  5:22-cv-203-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## <u>OPINION AND ORDER</u>

Plaintiff Krystal Lashonda Brejtfus seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

## B.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff filed an application for supplemental security income benefits on June 12, 2019, alleging disability beginning on July 1, 2017. (Tr. 101, 385-92). The application was denied initially and on reconsideration. (Tr. 101, 117). Plaintiff

requested a hearing and on May 19, 2021, a hearing was held before Administrative Law Judge ("ALJ") Charles Arnold. (Tr. 60-99).[1] On June 9, 2021, the ALJ entered a decision finding Plaintiff not under a disability since June 12, 2019, the date the application was filed. (Tr. 52).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on November 2, 2021. (Tr. 20-24). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on April 5, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 20).

**D.    Summary of ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 12, 2019, the application date. (Tr. 42). At step two, the ALJ found that Plaintiff had the following severe impairments: "recurrent headaches; schizoaffective disorder; and bipolar disorder with psychotic features." (Tr. 42). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the

---

[1] In the decision, the ALJ explained that a hearing was originally scheduled for July 7, 2020, but Plaintiff's representative requested a continuance and the hearing was rescheduled for October 7, 2020. (Tr. 40). Plaintiff failed to appear at the hearing, stating that she believed the hearing was set for October 8, 2020. (Tr. 40). The hearing was rescheduled for February 4, 2021, but Plaintiff's representative again requested a continuance because Plaintiff was in jail. (Tr. 40).

severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 44).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 [C.F.R. §] 416.967(c) except the individual is limited to only low stress work with no high production demands; only simple, routine, and repetitive tasks with simple type job instruction; and only occasional interaction with others at the worksite.

(Tr. 46). At step four, the ALJ found Plaintiff was unable to perform any past relevant work as a bank teller. (Tr. 51). At step five, the ALJ found that considering Plaintiff's age (32 years old on the application date), education (at least high school), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 51). The vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)     day worker, DOT 301.687-014, medium, unskilled, SVP 2

(2)     industrial cleaner, DOT 381.687-018, medium, unskilled, SVP 2

(3)     hospital cleaner, DOT 323.687-010, medium, unskilled, SVP 2

(Tr. 52). The ALJ concluded that Plaintiff had not been under a disability since June 12, 2019, the date the application was filed. (Tr. 52).

## II.     Analysis

On appeal, Plaintiff raises two issues: (1) whether the ALJ erred in failing to consider Plaintiff's frequency of treatment and hospitalizations during the adjudicated period, which precluded full-time, competitive employment; and (2) whether the ALJ's step three finding that Plaintiff's mental impairments do not meet or medically equal a listing impairment is supported by substantial evidence. (Doc. 23, p. 16, 19).

### A.     Residual Functional Capacity Findings

Plaintiff contends that she was involuntarily admitted for psychiatric hospitalization during certain periods in 2018 and 2020. (Doc. 23, p. 17). Plaintiff also contends that these involuntary hospitalizations along with other voluntary emergency hospitalizations show she would be absent from work. (Doc. 23, p. 17). Plaintiff claims that the involuntary hospitalizations alone average one-and-a-half to two days per month during this two-year period. (Doc. 23, p. 17-18). Plaintiff argues that despite these absences exceeding the tolerable limits for absences from competitive work, the ALJ failed to account for these absences in the RFC. (Doc. 23, p. 17-18).

The Commissioner contends that substantial evidence supports the ALJ's RFC assessment. (Doc. 24, p. 5). The Commissioner argues that Plaintiff's lack of treatment compliance – mainly her noncompliance with medications and therapy –

precipitated her inpatient, involuntary hospitalizations and, after resuming her medications and therapy, her symptoms completely abated. (Doc. 24, p. 5). The Commissioner also asserts that the ALJ thoroughly considered Plaintiff's medical and other evidence relating to her mental impairments and accounted for any limitations in Plaintiff's RFC. (Doc. 24, p. 5).

Prior to step four, the ALJ must assess Plaintiff's RFC, the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the action. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3). The ALJ must consider *all* of a claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment." *Id.* (citing 20 C.F.R. § 404.1545(b)-(d)).

In the decision, the ALJ noted that the record supports diagnoses of bipolar disorder with psychotic features and schizoaffective disorder and documents several psychiatric admission in May and June 2018. (Tr. 47). The ALJ observed that in

June 2019, Plaintiff presented to Salus Care for a psychiatric evaluation. (Tr. 47). She reported having mental health issues and also reported not taking any medication for a year. (Tr. 47). The ALJ summarized her reported issues and also her mental status exam. (Tr. 47). On exam, she had no cognitive deficits, her mood/affect were anxious and constricted, and her thoughts were coherent with reported auditory hallucinations, visual hallucinations, paranoia, and racing. (Tr. 47). Her speech and psychomotor were normal, her insight and judgment were good, and she denied suicidal and homicidal ideation. (Tr. 47). She was prescribed certain medications and started therapy. (Tr. 47). The ALJ noted records from individual therapy in August 2019 showed Plaintiff was fully oriented, cooperative, alert, clean, and had normal speech and normal psychomotor. (Tr. 48).

In that same month, the ALJ noted that Plaintiff attended a consultative examination. (Tr. 48). Plaintiff reported psychiatric problems and reported she was currently on prescribed medication. On exam, consultative examiner Eshan Kibria, D.O. found Plaintiff informative, pleasant, cooperative, oriented to time, place, and person coherent, and with a normal fund of general information and normal speech pattern. (Tr. 48). Dr. Kibria included no abnormal findings or behaviors. (Tr. 48). Later reports in 2019 showed a change in Plaintiff's medication regimen, attendance at therapy sessions, and she was fully oriented, cooperative, alert, clean, with normal speech and normal psychomotor. (Tr. 48).

The ALJ then noted a significant gap in mental health treatment, which coincided with the start of involuntary hospitalizations under the Baker Act in January 2020. The ALJ recounted that law enforcement initiated a Baker Act as Plaintiff was in a manic state and posed a threat to herself, the public, or both. (Tr. 48). She was admitted for three days, provided both medications and therapy, responded well to these modalities, and was stable on release. (Tr. 48). The ALJ noted a second involuntary hospitalization, but this time Plaintiff "eloped from the hospital but was in stable condition." (Tr. 48). Later in July, August, September, and October 2020, the ALJ noted Plaintiff required involuntary hospitalizations under the Baker Act. (Tr. 48-49). The same general pattern emerged. (Tr. 48-49). Plaintiff would not comply with medications and treatment, she would present with delusional or other types of mental health issues, and she would be involuntarily admitted under the Baker Act. (Tr. 48-49). When Plaintiff received medications and treatment, she improved and was discharged. (Tr. 49).

The ALJ summarized Plaintiff's mental symptoms as follows:

> In terms of the claimant's alleged mental symptoms, the record does support many of the symptoms alleged; however, these symptoms generally occur when she is not taking psychiatric medications. The record documents a history of not maintaining a psychiatric medication regimen despite having access to services and medication. Psychiatric clinicians have noted her primary barrier is her resistance towards medication and treatment compliance. She has had many involuntary psychiatric admissions secondary to running out of medication or being off medications entirely. Treating notes indicate that she is non-compliant with aftercare subsequent to release from

crisis stabilization. The record indicates that when she resumes medications, her psychotic and manic symptoms entirely abate. Her mental status exam is within normal limits at discharge. She denied side effects from the medications. Accordingly, the residual functional capacity more than accounts for her complaints, as it is limited to low stress work with no production demands; simple routine repetitive tasks with simple instructions; and only occasional interaction with others at the worksite. Overall, the medical evidence of record does not support the claimant's symptoms or functional limitations to the extent purported.

(Tr. 50).

Here, the ALJ thoroughly considered Plaintiff's mental health history, noting her many involuntarily commitments from 2018 through 2020. The ALJ found, however, that many if not all these involuntary hospitalizations were preceded by Plaintiff failing to comply with her medication regimen and failing to continue with therapy. Substantial evidence supports the ALJ's reasoning that if Plaintiff complied with her medications and therapy, these involuntary commitments would lessen or at best abate and would not interfere with Plaintiff's work schedule. As a result, substantial evidence supports the ALJ's RFC findings.

### B.    Listings 12.03 and 12.04

Plaintiff argues that based on her many involuntary, inpatient, psychiatric hospitalizations over a two-year period, the ALJ erred in finding she had only mild limitations in adapting or managing herself. (Doc. 23, p. 21). Plaintiff claims a reasonable reading of the record establishes that her limitations in adapting and managing herself on a regular and consistent basis are extreme, and so the ALJ

should have found Plaintiff met Listing 12.03 (schizophrenia spectrum and other psychotic disorders) and 12.04 (depressive, bipolar, and related disorders). (Doc. 23, p. 19, 23-24).

At step three, the burden lies with Plaintiff to show that she has an impairment that meets or medically equals a listed impairment. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 741 (11th Cir. 2008). For an impairment to meet a listing, a plaintiff must show that it meets *all* the specified medical criteria. *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 840 (11th Cir. 2019) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). If an impairment meets only some criteria, then it will not qualify, no matter the severity of the impairment. *Id.* To meet a listing, a plaintiff must have a diagnosis included in a listing and provide medical reports documenting that the conditions meet the specific criteria of a listing and the duration requirement. *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)). If a plaintiff satisfies all of the criteria of a listing, then she is considered disabled. *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (citing 20 C.F.R. § 416.920a)(4)(iii), (d).

For Listing 12.03, which covers schizophrenia and psychotic disorders, and Listing 12.04, which covers depressive, bipolar and related disorders, both these listings contain introductory criteria and paragraph A, B, and C diagnostic criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03, 12.04. Paragraph A includes the

medical criteria for each listing that must be present in the medical evidence. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.2. Paragraph B of each listing requires evaluations of the four functional areas. *Id.* To meet a listing under Paragraph B, a plaintiff must establish an extreme limitation in one area or marked limitation in two of the four areas of mental functioning. *See id.* Paragraph C provides the criteria used to evaluate serious and persistent mental disorders, meaning that the mental disorder must be serious and persistent and there must be a medically documented history of the existence of the disorder for at least two years. *See id.* To meet Listing 12.03 or 12.04, a plaintiff must satisfy the requirements of both paragraphs A and B, or both A and C. *See id*.

In the decision, the ALJ considered and rejected a finding of disability under either Listing 12.03 or 12.04. (Tr. 44). Plaintiff argues that the ALJ failed to address the Paragraph A criteria for either listing, even though the evidence shows that her impairments satisfy them. (Doc. 23, p. 20). This error, if any, was harmless because to meet a listing, Plaintiff must show that she met the criteria for both A and B,[2] and substantial evidence supports the ALJ's finding that Plaintiff did not satisfy the Paragraph B criteria as discussed below. *See Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 763 (11th Cir. 2014).

---

[2] The regulations also provide a second path to meeting a listing, namely meeting the criteria for paragraphs A and C. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00. Plaintiff raised no issue as to this path, thus the Court will not address it.

The ALJ found in the four broad mental functioning areas that Plaintiff had moderate limitations in understanding, remembering or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. (Tr. 44-45). Plaintiff's argument focuses on the ALJ's findings related to the fourth Paragraph B criteria, adapting or managing oneself. (Doc. 23, p. 21). In short, Plaintiff claims "[n]o reasonable ALJ could have reviewed the record, containing evidence of 16 Baker Acts and 48 days of involuntary inpatient psychiatric hospitalization over two years and found that she only experiences *mild* (i.e., slight) limitations in adapting or managing herself." (Doc. 23, p. 21).

As to adapting or managing oneself, the ALJ made these findings:

> As for adapting or managing oneself, the claimant has experienced a mild limitation. The medical evidence of record shows the claimant did not usually complain about serious problems with adaptation and managing herself. She has no history or suicide attempts or self-harm. Observations of treating and examining practitioners generally show the claimant had no deficiencies in hygiene and wore appropriate attire. During crisis stabilization admissions, she did exhibit problems managing herself. There is some evidence the claimant had serious problems being aware of normal hazards and taking appropriate precautions when she was not compliant with medications. The claimant had some problems with independently making plans and setting goals. The claimant handled her own activities of daily livings without significant assistance from others. (Ex. 5E; 8F; 9F; 11F; 13F; 15F)

(Tr. 45).

The ALJ acknowledged that Plaintiff had serious and severe mental health issues as shown by her need for crisis stabilization, which resulted in many involuntary psychiatric hospitalizations in a two-year period. (Tr. 45). But as discussed above, the ALJ found that many if not all these involuntary hospitalizations were preceded by Plaintiff being noncompliant with her medications and therapy. And once she took her medications consistently and attended therapy, she became stable, thus able to adapt and manage herself with only mild limitations. In addition, the ALJ found Plaintiff's daily activities of watching television, writing, doing art, cooking simple meals, doing laundry, washing dishes, driving, and shopping in stores supported less than extreme or marked limitations in any of the four broad areas of functioning. (Tr. 44-45). Again, when Plaintiff complied with her medication and therapy regimens, her mental health stabilized. Further, "[a] medical condition that can reasonably be remedied by medication or treatment "'is not disabling,'" such as a mental health condition that can be remedied by compliance with medications and therapy. *See Stone v. Comm'r of Soc. Sec.*, 503 F. App'x 692, 694 (11th Cir. 2013) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988)).

In sum, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not meet or equal the severity of a listed impairment, including Listing 12.03 and Listing 12.04.

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on July 24, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties